#906

NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 85-1476

SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 36,
and
SERVICE EMPLOYEES LOCAL 36/BOLR PENSION FUND
SERVICE EMPLOYEES LOCAL 36/BOLR WELFARE FUND

v.

PULLMAN, ALLAN
ATLANTIC REALTY GROUP, INC.
MEDICAL ARTS REALTY CORPORATION
MEDICAL TOWER LIMITED
SHELDON EQUITIES, INC.
SHELDON HOLDING CORPORATION
2500 REED STREET, INC.

Allan Pullman,

Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 83-5252)
District Judge: John P. Fullam

Submitted Under Third Circuit Rule 12(6)
March 7, 1986
Before: ALDISERT, Chief Judge, and SEITZ and ADAMS,
Circuit Judges.

(Filed       MAR 18      , 1986)

MEMORANDUM OPINION OF THE COURT

ALDISERT, <u>Chief Judge</u>.

The question for decision in this appeal by Allan Pullman is whether the district court abused its discretion when as a sanction for civil contempt it gave Pullman the alternative of paying amount agreed to in a consent judgment or be incarcerated. The parties agree that the standard of review is abuse of discretion. We find no abuse and affirm.

I.

Local 36 of the Service Employees International Union, and its pension and welfare funds, brought an action to recover unpaid wages, pension, and health and welfare contributions due and owing to or on behalf of members of Local 36 employed at three Philadelphia buildings—2500 Reed Street, the Medical Arts Building and the Medical Towers Building, owned, respectively, by 2500 Reed Street, Inc., Sheldon Equities, Inc. and the Medical Towers Limited, all defendants in the court below. In addition, Atlantic Realty, Inc., and Medical Arts Realty, Inc., managers of 2500 Reed Street and the Medical Arts Building, respectively, were defendants, as was Allan Pullman, an individual who owns or controls the entity defendants.

Claims against the entity defendants under the Employee Retirement Income Security Act, 29 U.S.C. § 1132 (ERISA) and the National Labor Relations Act, 29 U.S.C. § 185 (NLRA), were

asserted jointly against appellant Pullman on the basis that he was alleged to be an employer within the meaning of these federal statutes. In addition, a claim was stated against Pullman under the Pennsylvania Wage Payment and Collection Act, 43 Pa. Cons. Stat. Ann. § 260.1 et. seq. (Purdon 1964 & Supp. 1985), which allows an agent for a corporate employer to be held personally liable for unpaid wages including required health and welfare contributions. Id. § 260.2a. All claims asserted by the plaintiffs against all defendants were settled by the entry of a Stipulation and Consent Decree on June 26, 1984, which terminated the federal claims asserted personally against Pullman as a joint employer and dismissed without prejudice the state law claim asserted against him personally.

On May 24, 1985, plaintiffs filed a Petition for Contempt alleging nonpayment by the defendants of their obligations under the Stipulation and Consent Decree. It requested that the court impose a $500 per day fine on the defendants until full payment was made. After a hearing, the court on July 9, 1985, held the defendants in contempt and ordered payment of all amounts due pursuant to the Decree ($205,837.40) within five days. No sanction was imposed.

On July 19, 1985, plaintiffs filed a second Petition for Contempt alleging that only partial payment had been made by the defendants pursuant to the court's order of July 9, 1985. It requested specifically that Allan Pullman be incarcerated until defendants paid the entire amount due under the Consent Decree and the court's order of July 9, 1985.

We have stressed that the overriding purpose to be served by civil contempt is to benefit the complaining party. <u>Latrobe Steel Co. v. United Steelworkers</u>, 545 F.2d 1336, 1343 (3d Cir. 1976); <u>Cromaglass Corp. v. Ferm</u>, 500 F.2d 601, 604 (3d Cir. 1974). In <u>Latrobe Steel Co.</u>, we said:

> [T]he objective of a civil contempt decree is to benefit the complainant. Civil contempt proceedings are instituted primarily on the motion of the Plaintiff and are part of the underlying action.
>
> [C]ivil contempt itself may be divisible into two sub-categories which benefit the aggrieved party in distinctive ways. Remedial or compensatory actions are essentially backward looking, seeking to compensate the complainant through the payment of money for damages caused by past acts of disobedience. Coercive sanctions, in contrast, look to the future and are designed to aid the plaintiff by bringing a defiant party into compliance with the court order or by assuring that a potentially contumacious party adheres to an injunction by setting forth in advance the penalties the court will impose if the party deviates from the path of obedience.

545 F.2d at 1343-44 (footnotes omitted). We also have detailed the range of permissible sanctions:

> Trial judges have a variety of weapons with which they can achieve these ends. They may impose an indeterminate period of confinement which may be brought to end only by the contemnor's ultimate adherence to the court order. Alternatively, the court may levy a fine

We have considered all of the contentions presented by the appellant. The judgment of the district court will be affirmed in all respects.

_____

TO THE CLERK:

    Please file the foregoing opinion.

_____
Chief Judge