**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| RUSSELL F. SHEEHAN, as he is ADMINISTRATOR, ELECTRICAL WORKERS' HEALTH AND WELFARE FUND, LOCAL 103, I.B.E.W.; ELECTRICAL WORKERS' PENSION FUND, LOCAL 103, I.B.E.W.; ELECTRICAL WORKERS' SUPPLEMENTARY HEALTH AND WELFARE FUND, LOCAL 103, I.B.E.W.; ELECTRICAL WORKERS' DEFERRED INCOME FUND, LOCAL 103, I.B.E.W.; ELECTRICAL WORKERS' JOINT APPRENTICESHIP AND TRAINING FUND, LOCAL 103, I.B.E.W.; ELECTRICAL WORKERS' EDUCATIONAL AND CULTURAL FUND; ANTHONY J. SALAMONE, as he is ADMINISTRATOR, NATIONAL ELECTRICAL BENEFIT FUND; and LOCAL 103, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, <br>                 Plaintiffs <br><br> vs. <br><br> CHRIS MEALEY ELECTRICAL, INC., <br>                 Defendant <br><br> and <br><br> FIRST TRADE UNION BANK and FLEET BANK, <br>                 Trustees | C.A. No. 04-12209 EFH |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR A FINDING OF CIVIL CONTEMPT AND THE ISSUANCE OF A CAPIAS**

**I.     INTRODUCTION**

This is an action brought pursuant to §§502 and 515 of the Employee Retirement Income

Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132(a)(3) and (d)(1) and 1145 and

§301 of the Labor Management Relations Act, 29 U.S.C. §185 by employee benefit plans and a

labor union seeking to collect fringe benefit contributions due under the terms of a collective bargaining agreement.  Defendant Chris Mealey Electrical, Inc. (hereinafter "Mealey") is a Massachusetts corporation with a principal place of business listed at 90 Wilkins Road, Braintree, Massachusetts, and is bound to the terms of a collective bargaining agreement and the Plaintiffs' governing documents.

Plaintiffs Russell F. Sheehan, as he is Administrator, et al (hereinafter "Funds"), now move this honorable Court for an order issuing a capias to place the president of Defendant Chris Mealey Electrical, Inc. in custody until such time as he complies with this Court's Order for Preliminary Injunction, dated April 11, 2005, and its October 19, 2005 Order; specifically, until the Defendant permits a full and complete audit as twice ordered by this Court.

This Court has exclusive jurisdiction of this action pursuant to §502(a), (e) and (f) of ERISA, 29 U.S.C. §§1132(a), (e) and (f), without respect to the amount in controversy or the citizenship of the parties.

## II.    STATEMENT OF FACTS

Mealey is bound by the terms of the Letter of Assent authorizing the Boston Chapter, NECA as its collective bargaining representative for all matters contained in, or pertaining to, the then current and any subsequent collective bargaining agreements between Boston Chapter, NECA and Local Union, 103, I.B.E.W.  The Letter of Assent is attached to the Complaint as Exhibit A.  Mealey is also bound by the successive collective bargaining agreements to which it is signatory, including the Agreement which was effective from September 1, 2003 through August 31, 2006 (hereinafter "Agreement"), the relevant pages of which are attached to the Complaint as Exhibit B.  The Agreement requires employers to make contributions to Plaintiff Funds for each hour worked by covered employees.  The Agreement specifies the amount to be

contributed by an employer to each of Plaintiff Funds for each hour worked.  Employers are also required to file monthly remittance reports, on which employers calculate the payments they owe.     See Affidavit of Russell Sheehan ("Sheehan Aff."), attached to Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction, par. 2.

Mealey has failed to submit remittance reports to the Funds for work performed since April, 2004 or to forward the dues that it has deducted from its employees' wages.  Sheehan Aff., par. 4.  Counsel for the Funds sent certified letters to Mealey dated July 6, July 30, August 30, and September 28, 2004, notifying it of its delinquency for the above-mentioned period and demanding payment.  Copies of those letters are attached to the Complaint as Exhibit D.  To date, Mealey has failed and refused to pay the unliquidated amount in contributions and interest due.  Section 4.9 of the Agreement requires employers that become delinquent in their trust fund contributions to furnish employment records and a current list of projects, including the names and addresses of the owner, manager, general contractor and or subcontractor for whom it has worked.  Section 6.38(g) of the Agreement further provides that upon request, the parties thereto shall be allowed to examine the employer's payroll records.  See Complaint, Exhibit B; Sheehan Aff., par. 3.

On December 7, 2004, counsel for the Funds sent a certified letter to Mealey requesting that an audit be scheduled immediately and that the amounts due and owing be paid.  A copy of this letter is attached to the Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction as Exhibit 1.  The audit is necessary to ascertain both the extent of Mealey's liability to the Funds and the identities of its employees so that they may receive credit for benefits for the hours worked.  Mealey failed and refused to respond to the audit demands.  Sheehan Aff., par. 5.  Thus, on March 10, 2005, the Funds filed a Motion for Preliminary Injunction with this

Court, seeking to enjoin Mealey from refusing to permit an audit of its books and records.  The

Court granted this Motion on April 11, 2005, and the Court's Order for Preliminary Injunction,

attached hereto as Exhibit A, stated, in part:

> Defendant is bound by the terms of the collective bargaining
> agreement with Local Union, 103, I.B.E.W. to furnish to Plaintiffs
> employment records and a current list of projects, including the
> names and addresses of the owner, manager, general contractor
> and or subcontractor for whom it has worked, and to allow
> Plaintiffs to examine its payroll records.

Subsequently, on April 27, 2005, Plaintiffs served Defendant with a copy of the Court's

Order at Defendant's usual place of business, service made upon Monique Mealey.  A true and

accurate copy of the Return of Service is attached hereto as Exhibit B.  On May 10, 2005, Funds'

counsel sent a letter to Mealey via certified and first class mail, further informing the Defendant

of the Order and demanding that it would file a Motion for Civil Contempt should Defendant fail

to promptly arrange a time for the Funds' auditor to examine its payroll records.  A true and

accurate copy of Funds' counsel's May 10, 2005 letter is attached hereto as Exhibit C.  No

response was received to this letter or to any telephone messages left with the Defendant

thereafter.

A Status Conference in this matter was held on October 19, 2005, at which time this

Court issued a second Order, attached hereto as Exhibit D, which stated, in part:

> The Court hereby orders the Defendant Chris Mealey Electrical,
> Inc. to comply with the Court's Order for Preliminary Injunction
> and to provide the plaintiff with its payroll records, employment
> records, and a current list of projects, for the period April 2004 to
> the present, so that an accounting can be completed, on or before
> November 2, 2005.  Defendant Chris Mealey Electrical, Inc.'s
> failure and refusal to comply with this Order shall result in a fine
> in the amount of $500 per day to be imposed from November 2,
> 2005 up to and including the date of such compliance.

The Court's October 19, 2005 Order was sent to Mealey by the Funds' counsel via certified and first class mail on October 20, 2005. A true and accurate copy of Funds' counsel's October 20, 2005 letter is attached hereto as Exhibit E. To date, Mealey has failed to comply with the Court's April 11, 2005 Order for Preliminary Injunction or its October 19, 2005 Order. As a result of its failure to comply with the Court's October 19, 2005 Order, Mealey has compiled a Court-ordered fine of $23,500.00 to date.

## III.  ARGUMENT

### A.   THE COURT SHOULD FIND MEALEY IN CONTEMPT OF COURT FOR VIOLATING THE COURT'S ORDERS.

The purpose of civil contempt is to "coerce present or future compliance with an order of the court." In Re Kave, 760 F. 2d 343, 351 (1st Cir. 1985). In order to hold a party in contempt, the complainant must show by clear and convincing evidence that the party violated a court order that is clear and unambiguous. Project B.A.S.I.C. v. Kemp, 947 F.2d 11, 17 (1st Cir. 1991); Langton v. Johnson, 928 F.2d 1206, 1220 (1st Cir. 1991). The Court may also require the order to satisfy the specificity requirements of Rule 65(d) to be enforceable in contempt.[1] Burke v. Guiney, 700 F.2d 767, 769 (1st Cir. 1983).

### 1.   The Court's April 11, 2005 Injunctive Order and its October 19, 2005 Order are Clear and Unambiguous, and its April 11, 2005 Order Satisfies the Specificity Requirements of Rule 65(d).

The Court's April 11, 2005 and October 19, 2005 Orders are clear and unambiguous. The Orders are specific in their terms and describe in reasonable detail the acts required of

---

[1] Fed. R. Civ. P. 65(d) provides: Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

Mealey.  See Project B.A.S.I.C., supra at 17 (quoting Reed v. Cleveland Bd. of Educ., 607 F.2d 749, 752 (6th Cir. 1979)) ("'The notice of a judicial order upon violation of which a contempt finding may properly based is such notice as would clearly tell a reasonable person what he is required to do or abstain from doing.'")

A reasonable person would clearly understand the acts the Orders require of Mealey and its agents, officers, employees, accountants, and assigns – allowing the Funds to examine Mealey's payroll records, and providing the Funds with employment records and a current list of projects for the period April, 2004 to the present.  Further, the April 11, 2005 Order specifies that Mealey need provide the names and addresses of the owner, manager, general contractor, and/or subcontractor for any of its current projects.  There was no question about the meaning of the Court's Orders at the time of their issuance, and neither the Funds nor Mealey has ever asked the Court to clarify or reconsider the Orders.

**2.    There is Clear and Convincing Evidence that Mealey Violated the Court's April 11, 2005 and October 19, 2005 Orders.**

To date, Mealey has failed and refused to cooperate with the Funds and provide them with its payroll records, employment records, and a current list of projects for the period April, 2004 to the present, despite the Orders' clear mandate to do so.  Mealey's failure and refusal to provide the records constitutes a clear, direct violation of the Court's Orders.

**3.    Because Mealey is in Contempt of the Court's Order, the Court Should Issue a Capias to Place Defendant's President Christopher J. Mealey in Custody.**

District courts have broad power to design remedies in civil contempt proceedings.

McComb v. Jacksonville Paper Co., 336 U.S. 187, 193-194 (1949); Service Employees International Union, Local 36 et al. v. Pullman et al., C.A. No. 85-1476 (3d Cir. March 7, 1986).

6

A civil contempt judgment "results in imprisonment or a conditional fine to induce the purging of contemptuous conduct." In Re Kave, 760 F.2d 343, 351 (1st Cir. 1985).

The First Circuit has recognized the availability of the sanctions of imprisonment as well as monetary fines in civil contempt proceedings to "*induce* the purging of contemptuous conduct." In Re Kave, 760 F.2d 343, 351 (1985). Accord Service Employees International Union, Local 36, supra, slip op. at 5-6 (quoting Latrobe Steel Co. v. United Steelworkers, 545 F.2d 1336, 1344 (3d Cir. 1976) ("Trial judges . . . may impose an indeterminate period of confinement which may be brought to end only by the contemnor's ultimate adherence to the court's order . . . [;] may levy a fine of a specified amount for past refusal to conform to the injunction, conditioned, however, on the defendant's continued failure to obey . . . [; and] may also specify that a disobedient party will be fined a certain amount for each day of noncompliance.")

Further, federal courts have recognized the availability of these remedies in ERISA actions in which defendants have failed and refused to pay contributions to health and welfare and pension plans and/or refused such plans' requests for audits of payroll records. See, e.g., Service Employees International Union, Local 36, supra (finding district court did not abuse its discretion in requesting incarceration of defendant's principal officer pending payment of all unpaid contributions due pension and health and welfare funds as sanction in civil contempt proceedings); Building Trades United Pension Trust Fund et al. v. Eatons Asphalt Service, No. 83 C 1871 (E.D. Wisc. August 28, 1986) (imposing ten day jail term on defendant's principal officer, pending hearing to determine whether defendant purged his contemptuous conduct before hearing, for failure to pay unpaid health and welfare and pension fund contributions and permit audit of payroll records and books).

7

Christopher J. Mealey, president of the Defendant corporation, should be held personally liable for the Defendant's contemptuous conduct, and as such, a capias should be issued in his name.  See Wilson v. United States, 221 U.S. 361, 376 (1911), N.L.R.B. v. Maine Caterers, Inc., 732 F.2d 689, 691 (1st Cir. 1984); Electrical Workers Pension Trust Fund of Local Union #58, IBEW v. Gary's Electric Service Co., 340 F.3d 373, 380-82 (6th Cir. 2003).

It is imperative that Mealey comply with its obligation to the Funds to furnish employment records and a current list of projects, including the names and addresses of the owner, manager, general contractor and or subcontractor for whom it has worked, and to allow the Funds to examine its payroll records.  Given Mealey's ignorance of two Court orders and of a Court-ordered fine that has reached $23,500.00, there is little reason to believe that Mealey will comply with the Court's mandates, and with its obligations under the collective bargaining agreement to which it is signatory, short of its president Christopher J. Mealey being placed in custody.

## IV.    **CONCLUSION**

For the foregoing reasons, the Court should grant the Funds' Motion for Finding of Civil Contempt and For Further Action.

Respectfully submitted,

RUSSELL F. SHEEHAN, as he is
ADMINISTRATOR, ELECTRICAL
WORKERS' HEALTH AND WELFARE
FUND, LOCAL 103, I.B.E.W., et al,

By their attorneys,

/s/ Gregory A. Geiman
Anne R. Sills, Esquire
BBO #546576
Gregory A. Geiman, Esquire
BBO #655207

Segal, Roitman & Coleman
11 Beacon Street
Suite #500
Boston, MA  02108
(617) 742-0208

Dated:  December 19, 2005

**CERTIFICATE OF SERVICE**

     I hereby certify that the foregoing Memorandum of Law in Support of Plaintiffs' Motion for a Finding of Civil Contempt and the Issuance of a Capias has been served by first class mail upon defendant Chris Mealey Electrical, Inc. at 90 Wilkins Road, Braintree, MA  02184 this 19th day of December, 2005.

/s/ Gregory A. Geiman
Gregory A. Geiman, Esquire

GAG/gag&ts
ARS 3013 02-037/memo-capias.doc