UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUSSELL F. SHEEHAN, as he is ADMINISTRATOR, ELECTRICAL WORKERS' HEALTH AND WELFARE FUND, LOCAL 103, I.B.E.W.; ELECTRICAL WORKERS' PENSION FUND, LOCAL 103, I.B.E.W.; ELECTRICAL WORKERS' SUPPLEMENTARY HEALTH AND WELFARE FUND, LOCAL 103, I.B.E.W.; ELECTRICAL WORKERS' DEFERRED INCOME FUND, LOCAL 103, I.B.E.W.; ELECTRICAL WORKERS' JOINT APPRENTICESHIP AND TRAINING FUND, LOCAL 103, I.B.E.W.; ELECTRICAL WORKERS' EDUCATIONAL AND CULTURAL FUND; ANTHONY J. SALAMONE, as he is ADMINISTRATOR, NATIONAL ELECTRICAL BENEFIT FUND; and LOCAL 103, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, Plaintiffs<br><br>vs.<br><br>CHRIS MEALEY ELECTRICAL, INC., Defendant<br><br>and<br><br>FIRST TRADE UNION BANK and FLEET BANK, Trustees | C.A. No.  04-12209 EFH |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR THE ISSUANCE OF A CAPIAS**

**I.      INTRODUCTION**

This is an action brought pursuant to §§502 and 515 of the Employee Retirement Income

Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132(a)(3) and (d)(1) and 1145 and

§301 of the Labor Management Relations Act, 29 U.S.C. §185 by employee benefit plans and a

labor union seeking to collect fringe benefit contributions due under the terms of a collective bargaining agreement. Defendant Chris Mealey Electrical, Inc. is a Massachusetts corporation with a principal place of business listed at 90 Wilkins Road, Braintree, Massachusetts, and is bound to the terms of a collective bargaining agreement and the Plaintiffs' governing documents.

Plaintiffs Russell F. Sheehan, as he is Administrator, *et al.* (hereinafter "Funds"), now move this honorable Court for an order issuing a capias to place the president of Defendant Chris Mealey Electrical, Inc. in custody until such time as he complies with this Court's Order for Preliminary Injunction, dated April 11, 2005, and its October 19, 2005 Order; specifically, until the Defendant produces all relevant records as twice ordered by this Court.

This Court has exclusive jurisdiction of this action pursuant to §502(a), (e) and (f) of ERISA, 29 U.S.C. §§1132(a), (e) and (f), without respect to the amount in controversy or the citizenship of the parties.

## II.    STATEMENT OF FACTS

Chris Mealey Electrical, Inc. is bound by the terms of the Letter of Assent authorizing the Boston Chapter, NECA as its collective bargaining representative for all matters contained in, or pertaining to, the then current and any subsequent collective bargaining agreements between Boston Chapter, NECA and Local Union, 103, I.B.E.W. The Letter of Assent is attached to the Complaint for Delinquent Contributions and to Compel an Audit ("Complaint") as Exhibit A. Chris Mealey Electrical, Inc. is also bound by the successive collective bargaining agreements to which it is signatory, including the Agreement which was effective from September 1, 2003 through August 31, 2006 (hereinafter "Agreement"), the relevant pages of which are attached to the Complaint as Exhibit B. The Agreement requires employers to make contributions to Plaintiff Funds for each hour worked by covered employees. The Agreement specifies the

amount to be contributed by an employer to each of Plaintiff Funds for each hour worked. Section 6.38(g) of the Agreement further provides that upon request, the parties thereto shall be allowed to examine the employer's payroll records. See Complaint, Ex. B.

On March 10, 2005, the Funds filed a Motion for Preliminary Injunction with this Court, seeking to enjoin Chris Mealey Electrical, Inc. from refusing to permit an audit of its books and records. The Court granted this Motion on April 11, 2005, and the Court's Order for Preliminary Injunction stated, in part:

> Defendant is bound by the terms of the collective bargaining agreement with Local Union, 103, I.B.E.W. to furnish to Plaintiffs employment records and a current list of projects, including the names and addresses of the owner, manager, general contractor and or subcontractor for whom it has worked, and to allow Plaintiffs to examine its payroll records.

Subsequently, on April 27, 2005, Plaintiffs served Defendant with a copy of the Court's Order at Defendant's usual place of business, service made upon Monique Mealey. A true and accurate copy of the Return of Service is attached hereto as Exhibit A. On May 10, 2005, Funds' counsel sent a letter to Chris Mealey Electrical, Inc. via certified and first class mail, further informing the Defendant of the Order and demanding that it would file a Motion for Civil Contempt should Defendant fail to promptly arrange a time for the Funds' auditor to examine its payroll records. A true and accurate copy of Funds' counsel's May 10, 2005 letter is attached hereto as Exhibit B. No response was received to this letter or to any telephone messages left with the Defendant thereafter.

A Status Conference in this matter was held on October 19, 2005, at which time this Court issued a second Order, which stated, in part:

> The Court hereby orders the Defendant Chris Mealey Electrical, Inc. to comply with the Court's Order for Preliminary Injunction

>and to provide the plaintiff with its payroll records, employment records, and a current list of projects, for the period April 2004 to the present, so that an accounting can be completed, on or before November 2, 2005. Defendant Chris Mealey Electrical, Inc.'s failure and refusal to comply with this Order shall result in a fine in the amount of $500 per day to be imposed from November 2, 2005 up to and including the date of such compliance.

The Court's October 19, 2005 Order was sent to Chris Mealey Electrical, Inc. by the Funds' counsel via certified and first class mail on October 20, 2005. A true and accurate copy of Funds' counsel's October 20, 2005 letter is attached hereto as Exhibit C. No reply was received from the Defendant. Thereafter, the Plaintiffs filed a Motion for Civil Contempt. On January 17, 2006, this Court found Chris Mealey Electrical, Inc. president Christopher J. Mealey to be in contempt of this Court for his company's failure to comply both with this Court's April 11, 2005 Order for a Preliminary Injunction to Obtain an Audit and its October 19, 2005 Order. A capias for Mr. Mealey's arrest was issued on January 18, 2006. A Status Conference was held on January 31, 2006, which Mr. Mealey attended of his own volition. The parties were directed to meet in an effort to resolve the underlying dispute regarding Mr. Mealey's failure to produce records necessary for the conduct by the Plaintiff Funds of a payroll audit. The Plaintiffs were further directed to file a recommendation within ten days as to any further action that the Court should take with regard to its contempt finding against Mr. Mealey.

In a February 9, 2006 Recommendation to this Court, the Plaintiffs stated that, while Mr. Mealey had produced remittance reports stating that his company did not work any hours utilizing I.B.E.W. Local 103 electricians during the period of the audit, i.e. April, 2004 to the present, Mr. Mealey had not yet produced documents for the years 2004 and 2005 that would substantiate his contention that Chris Mealey Electrical, Inc. ceased operations in April, 2004. The February 9, 2006 Recommendation requested that, Mr. Mealey be sentenced to serve five

4

days in jail for his contempt if he failed to produce the remainder of the relevant documents by February 17, 2006.  The Recommendation further requested that Mr. Mealey's contempt result in a fine levied against him personally, totaling $6,836.55, which represented the amount of the attorneys' fees and costs incurred by the Funds in pursuit of the aforementioned payroll records.  The Plaintiffs' Recommendation was endorsed via electronic Court Order on February 15, 2006.

  Mr. Mealey subsequently supplied Chris Mealey Electrical, Inc.'s tax return for the year 2004, but stated at the time that he did not yet have a 2005 tax return for Chris Mealey Electrical, Inc.  Plaintiffs alternatively requested a letter, or other appropriate documentation, from his accountant confirming that the corporation did not conduct any business in 2005.  No such letter was forthcoming.  However, after a telephone conversation between Mr. Mealey and Funds' counsel on March 13, 2006, the Funds submitted their March 14, 2006 Recommendation to this Court, recommending – based upon counsel's conversation with Mr. Mealey – that Mr. Mealey be allowed until March 17, 2006 to have his accountant provide the Funds with the requested documentation.  This Plaintiffs' Recommendation was endorsed via electronic Court Order on March 15, 2006.

  The documentation was not provided by March 17, 2006.  Thereafter, on March 23, 2006, the Plaintiffs filed their Motion for Compliance, in which they sought an order compelling Chris Mealey Electrical, Inc. to comply with the Court's numerous mandates that Mr. Mealey provide relevant documents for the year 2005 that would substantiate that Chris Mealey Electrical, Inc. was no longer in operation as of April, 2004, as Mr. Mealey contended.  This Motion for Compliance was granted on March 23, 2006, and further stated that Mr. Mealey's failure to comply with the Order on or before April 6, 2006 would result in an arrest warrant being immediately issued for the arrest of Mr. Mealey.  Mr. Mealey was provided with a copy of

the Court's March 23, 2006 Order, enclosed with a letter from Funds' counsel, which was sent certified and first-class mail on March 24, 2006. A true and accurate copy of Funds' counsel's March 24, 2006 letter is attached hereto as Exhibit D. The certified letter was returned to sender as unclaimed, but the first class letter did not return.

On April 11, 2006, Mr. Mealey provided Plaintiffs' counsel with records regarding banking activity undertaken by Chris Mealey Electrical, Inc. in 2005. See Exhibit E, attached hereto. Far from proving that the corporation did not conduct any business in 2005, the banking records demonstrated that a number of business-related transactions were made by the corporation in 2005, including debit card purchases at the Home Depot, numerous gas stations, an electrical supply store, and a communications provider. To date, Mr. Mealey has failed to provide the Plaintiffs with either the 2005 tax return for Chris Mealey Electrical, Inc. or a letter or other appropriate documentation from his accountant confirming that the corporation did not conduct any business in 2005. See Affidavit of Gregory A. Geiman ("Geiman Aff."), ¶2. Funds' counsel advised Mr. Mealey via voicemail on his cellular telephone of the Court's scheduling of a Status Conference in this matter, and the importance of his providing the necessary records before the date of the Status Conference. Id. Mr. Mealey did return one of counsel's calls on November 30, 2006 and left a voicemail stating that he would seek to produce the necessary records. However, said records were not received by the date of the Status Conference, which Mr. Mealey did not attend, and Mr. Mealey has failed to return counsel's voicemails left after November 30, 2006. Id.

Further, Mr. Mealey has failed to pay the $6,836.55 fine that was levied by this Court in its February 15, 2006 Order against Mr. Mealey personally, which is to be remitted to the Plaintiffs. Geiman Aff., ¶3.

III.     **ARGUMENT**

    A.     **THE COURT HAS FOUND MR. MEALEY IN CONTEMPT OF COURT FOR VIOLATING THE COURT'S ORDERS.**

As stated above, on January 17, 2006, this Court found Chris Mealey Electrical, Inc. president Christopher J. Mealey to be in contempt of Court for his company's failure to comply both with this Court's April 11, 2005 Order for a Preliminary Injunction to Obtain an Audit and its October 19, 2005 Order.

    B.     **AS MR. MEALEY HAS BEEN FOUND IN CONTEMPT OF THE COURT'S ORDERS, THIS COURT SHOULD ISSUE A CAPIAS TO PLACE DEFENDANT'S PRESIDENT CHRISTOPHER J. MEALEY IN CUSTODY.**

District courts have broad power to design remedies in civil contempt proceedings. McComb v. Jacksonville Paper Co., 336 U.S. 187, 193-194 (1949); Service Employees International Union, Local 36 et al. v. Pullman et al., C.A. No. 85-1476 (3d Cir. March 7, 1986). A civil contempt judgment "results in imprisonment or a conditional fine to induce the purging of contemptuous conduct." In Re Kave, 760 F.2d 343, 351 (1st Cir. 1985).

The First Circuit has recognized the availability of the sanctions of imprisonment as well as monetary fines in civil contempt proceedings to "*induce* the purging of contemptuous conduct." In Re Kave, 760 F.2d 343, 351 (1985). Accord Service Employees International Union, Local 36, supra, slip op. at 5-6 (quoting Latrobe Steel Co. v. United Steelworkers, 545 F.2d 1336, 1344 (3d Cir. 1976) ("Trial judges . . . may impose an indeterminate period of confinement which may be brought to end only by the contemnor's ultimate adherence to the court's order . . . [;] may levy a fine of a specified amount for past refusal to conform to the injunction, conditioned, however, on the defendant's continued failure to obey . . . [; and] may

also specify that a disobedient party will be fined a certain amount for each day of noncompliance.")

Further, federal courts have recognized the availability of these remedies in ERISA actions in which defendants have failed and refused to pay contributions to health and welfare and pension plans and/or refused such plans' requests for audits of payroll records. See, e.g., Service Employees International Union, Local 36, supra (finding district court did not abuse its discretion in requesting incarceration of defendant's principal officer pending payment of all unpaid contributions due pension and health and welfare funds as sanction in civil contempt proceedings); Building Trades United Pension Trust Fund et al. v. Eatons Asphalt Service, No. 83 C 1871 (E.D. Wisc. August 28, 1986) (imposing ten day jail term on defendant's principal officer, pending hearing to determine whether defendant purged his contemptuous conduct before hearing, for failure to pay unpaid health and welfare and pension fund contributions and permit audit of payroll records and books).

Christopher J. Mealey, president of the Defendant corporation, should be held personally liable for the Defendant's contemptuous conduct, and as such, a capias should be issued in his name. See Wilson v. United States, 221 U.S. 361, 376 (1911), N.L.R.B. v. Maine Caterers, Inc., 732 F.2d 689, 691 (1st Cir. 1984); Electrical Workers Pension Trust Fund of Local Union #58, IBEW v. Gary's Electric Service Co., 340 F.3d 373, 380-82 (6th Cir. 2003).

It is imperative that Mealey comply with its obligation to furnish the Funds with either the 2005 tax return for Chris Mealey Electrical, Inc. or a letter or other appropriate documentation from his accountant confirming that the corporation did not conduct any business in 2005. At this point in time, the Funds would also request a letter or other appropriate documentation from Mr. Mealey's accountant confirming that the corporation has not conducted

any business in 2006. Without the 2005 and 2006 tax returns or other appropriate documentation, the Plaintiff Funds cannot confirm that Chris Mealey Electrical, Inc. did not operate for 2005 and 2006 and that, as such, no fringe benefit contributions would be owed for those years. The Funds have a fiduciary obligation to ensure that all employees performing covered work are properly credited for their hours worked and to collect all contributions owed under the Employee Retirement Income Security Act of 1974 ("ERISA") so that they can provide all of the benefits to which their participants and beneficiaries are contractually entitled. See 29 U.S.C. §1001, et seq. The Funds depend on their signatory employers, such as Chris Mealey Electrical, Inc., to remit the full amount of contributions owed under the terms of the collective bargaining agreement so that the Funds may remain fully funded. Thus, the Funds can be ensured of paying the workers' hard-earned health and welfare and pension benefits.

Given Mr. Mealey's refusal to comply with two Court orders, to produce the necessary records, and to pay a Court-ordered fine of $6,836.55, there is little reason to believe that Mr. Mealey will comply with the Court's mandates, and with its obligations under the collective bargaining agreement to which it is signatory, short of Mr. Mealey being placed in custody.

## IV.    CONCLUSION

WHEREFORE, the Plaintiffs respectfully move that this honorable Court, in accordance with its March 24, 2006 Order, issue a capias for the arrest of Christopher J. Mealey and detain him until such time as he provides the Funds with either the 2005 tax return for Chris Mealey Electrical, Inc. or a sworn affidavit from his accountant confirming that the corporation did not conduct any business in 2005 *and* 2006. Given the passage of time, and the importance of receiving a definitive answer as to the Defendant's business operations, the Funds now believe that a sworn affidavit from Mr. Mealey's accountant is more appropriate than a letter. The

9

Funds also respectfully move that Mr. Mealey be compelled to provide payment to the Funds of the $6,836.55 fine that was levied by this Court in its February 15, 2006 Order, along with an additional $1,826.00 in fees that have been incurred by the Funds in the litigation of this matter since February 15, 2006.  See Exhibit F, attached hereto.

> Respectfully submitted,
>
> RUSSELL F. SHEEHAN, as he is
> ADMINISTRATOR, ELECTRICAL
> WORKERS' HEALTH AND WELFARE
> FUND, LOCAL 103, I.B.E.W., et al,
>
> By their attorneys,
>
> /s/ Gregory A. Geiman
> Anne R. Sills, Esquire
> BBO #546576
> Gregory A. Geiman, Esquire
> BBO #655207
> Segal, Roitman & Coleman
> 11 Beacon Street
> Suite #500
> Boston, MA  02108
> (617) 742-0208
> ggeiman@segalroitman.com

Dated:  December 22, 2006

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Memorandum of Law in Support of Plaintiffs' Motion for a the Issuance of a Capias has been served by first class mail upon defendant Chris Mealey Electrical, Inc. at 90 Wilkins Road, Braintree, MA  02184 this 22nd day of December, 2006.

> /s/ Gregory A. Geiman
> Gregory A. Geiman, Esquire

GAG/gag&ts
ARS 3013 02-037/memo-supmot-capias2.doc