UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUSSELL F. SHEEHAN, as he is ADMINISTRATOR, ELECTRICAL WORKERS' HEALTH AND WELFARE FUND, LOCAL 103, I.B.E.W.; ELECTRICAL WORKERS' PENSION FUND, LOCAL 103, I.B.E.W.; ELECTRICAL WORKERS' SUPPLEMENTARY HEALTH AND WELFARE FUND, LOCAL 103, I.B.E.W.; ELECTRICAL WORKERS' DEFERRED INCOME FUND, LOCAL 103, I.B.E.W.; ELECTRICAL WORKERS' JOINT APPRENTICESHIP AND TRAINING FUND, LOCAL 103, I.B.E.W.; ELECTRICAL WORKERS' EDUCATIONAL AND CULTURAL FUND; ANTHONY J. SALAMONE, as he is ADMINISTRATOR, NATIONAL ELECTRICAL BENEFIT FUND; and LOCAL 103, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, Plaintiffs<br><br>vs.<br><br>CHRIS MEALEY ELECTRICAL, INC., Defendant<br><br>and<br><br>FIRST TRADE UNION BANK and FLEET BANK, Trustees | C.A. No. 04-12209 EFH |

**PLAINTIFFS' RENEWED MOTION FOR THE ISSUANCE OF A CAPIAS**

Plaintiffs Russell F. Sheehan, as he is Administrator, *et al.* (hereinafter "Funds"), renew their motion to this honorable Court for an order issuing a capias to place the president of Defendant Chris Mealey Electrical, Inc. (hereinafter "Mealey"), Christopher J. Mealey, in custody until such time as he complies with this Court's Order for Preliminary Injunction, dated

April 11, 2005, and its subsequent October 19, 2005 Order; specifically, until the Defendant produces all relevant records as twice ordered by this Court.

Mealey is bound by the terms of a collective bargaining agreement which provides, in part, that the parties thereto shall be allowed to examine the employer's payroll records upon request. On March 10, 2005, the Funds filed a Motion for Preliminary Injunction with this Court, seeking to enjoin Mealey from refusing to permit an audit of its books and records. The Court granted this Motion on April 11, 2005, and the Court's Order for Preliminary Injunction stated, in part:

> Defendant is bound by the terms of the collective bargaining agreement with Local Union, 103, I.B.E.W. to furnish to Plaintiffs employment records and a current list of projects, including the names and addresses of the owner, manager, general contractor and or subcontractor for whom it has worked, and to allow Plaintiffs to examine its payroll records.

Mealey was served with a copy of the Order but continued to fail to comply. A Status Conference in this matter was held on October 19, 2005, at which time this Court issued a second Order, which stated, in part:

> The Court hereby orders the Defendant Chris Mealey Electrical, Inc. to comply with the Court's Order for Preliminary Injunction and to provide the plaintiff with its payroll records, employment records, and a current list of projects, for the period April 2004 to the present, so that an accounting can be completed, on or before November 2, 2005. Defendant Chris Mealey Electrical, Inc.'s failure and refusal to comply with this Order shall result in a fine in the amount of $500 per day to be imposed from November 2, 2005 up to and including the date of such compliance.

Mealey was served with a copy of this second Order, as well, but continued to fail to comply. Thereafter, on January 17, 2006, this Court found Christopher J. Mealey to be in contempt of this Court for his company's failure to comply both with this Court's April 11, 2005 Order for a

2

Preliminary Injunction to Obtain an Audit and its October 19, 2005 Order. A capias for Mr. Mealey's arrest was issued on January 18, 2006, but not acted upon because Mr. Mealey appeared in Court of his own volition for a subsequent Status Conference and promised to provide certain relevant documents.

However, by March 23, 2006, when Mr. Mealey had still not supplied the requisite documents needed to verify that his company had ceased operating in April, 2004, as he contended, this Court ordered that Mealey's failure to provide the relevant documentation to the Funds on or before April 6, 2006 would result in a capias being immediately issued for the arrest of Mr. Mealey. This capias was never issued because, on April 11, 2006, Mr. Mealey provided the Funds with records regarding banking activity undertaken by the company in 2005. However, upon review, the banking records raised more questions than answers. The banking records verified that a number of business-related transactions were made by the company in 2005, including debit card purchases at Home Depot, gas stations, an electrical supply store, and a communications provider. The banking records made it imperative that the Funds receive a copy of Mealey's 2005 tax return. However, by the end of 2006, Mealey had continued to fail to provide the 2005 tax return. As such, on January 3, 2007, this Court ordered that yet another capias be issued for Mr. Mealey's arrest. But Mr. Mealey continued his pattern of reacting only when compelled by Court action, and shortly after the Court ordered that the capias be issued, Mr. Mealey and his accountant contacted Funds' counsel with the promise of the forthcoming 2005 tax return. Based on these promises, the Funds hesitantly agreed to recommend that the Court withhold the issuance of the capias.

The 2005 tax return was finally delivered to the Funds in March, 2007, and this document -- like the banking records before it -- verified that Mealey was conducting business in

3

2005, with gross sales totaling $29,670.00. In order to meet their fiduciary duties and to ensure that all contributions due for work performed by Mealey's employees were in fact accounted for, the Funds decided at this time that they could no longer rely on Mealey's assertions that he had ceased business in April, 2004 and that they were now obligated to conduct a full audit of Mealey's payroll records for the period April, 2004 to the present. This Court had initially ordered that Mealey undergo such a full audit in its April 11 and October 19, 2005 Orders; however, the Funds were hoping that the banking and tax records provided by Mealey would confirm his assertion as to when the company ceased operating and thereby eliminate the need for a more involved audit. Unfortunately, the records did just the opposite and cemented the need for the full audit.

     A Status Conference was held on March 28, 2007, after which Funds' counsel and Mr. Mealey met and came to terms on a settlement agreement, in principle, which included Mealey's promise to cooperate in an expeditious audit of its payroll records for the period April, 2004 to the present and to pay any contributions found due as a result of the audit. See Affidavit of Gregory A. Geiman ("Geiman Aff."), ¶¶2-3. In fact, Mr. Mealey had informed this Court during the Status Conference that he was willing to work with the Funds to have this audit completed. A draft of the settlement agreement was sent to both the Funds' administrator and Mr. Mealey the next day; though the Funds' administrator executed the document that very day, Mr. Mealey has yet to execute and return the settlement agreement or to make payment of a $4,000.00 initial payment toward the Court-levied fine against it that came due under the terms of the settlement agreement on April 10, 2007. Mr. Mealey has also not responded to Funds' counsel's telephone voicemails since that time. Geiman Aff., ¶¶ 3-4, 6. At the Funds' direction, an auditor with the firm of Vitale, Caturano & Company, Ltd. sent a letter to Mr. Mealey on April 13, 2007 via

certified and first class mail, asking him to prepare and send, no later than April 27, 2007, a series of relevant payroll records for the period April 1, 2004 through March 31, 2007 so that an audit could be conducted.  See Affidavit of Sean E. Donlan, ¶2.  To date, the auditor has neither received any of the requested documents nor has he been contacted by Mealey.  Id., ¶3.

     Plaintiffs do not lightly renew their motion for issuance of a capias; however, as the history that has been set out above demonstrates, Plaintiffs have made every effort to cooperate with the Defendant and to resolve this suit, but the Defendant's consistent and blatant refusal to honor its obligations -- except when faced with the possibility of imprisonment -- has left Plaintiffs with no other choice but to once again seek this Court's intervention.  As this Court is aware, the Plaintiffs are obligated to collect all contributions owed under the Employee Retirement Income Security Act of 1974 ("ERISA") to remain fully funded so that they can provide all of the benefits to which their participants and beneficiaries are contractually entitled. See 29 U.S.C. §1001, et seq.  Plaintiffs depend on their signatory employers, such as Mealey, to remit the full amount of contributions owed under the terms of the collective bargaining agreement so that the Funds may remain fully funded.  Thus, the Funds can be ensured of paying the workers' hard-earned health and welfare and pension benefits.  Without being permitted to conduct an audit by Mealey, the Funds cannot fulfill their fiduciary obligations to their participants and beneficiaries and ensure that Mealey has indeed remitted the full amount of contributions it owes for work performed by its employees.

     WHEREFORE, the Plaintiffs respectfully move that this honorable Court, in accordance with its previous finding of contempt against Mr. Mealey, issue a capias for the arrest of Christopher J. Mealey and detain him until such time as he provides the Funds with all payroll records requested by the auditor for the period April, 2004 to the present.  The Funds also

5

respectfully move that Mr. Mealey be compelled to provide payment to the Funds of the $8,662.55 in fees that have been incurred by the Funds in the litigation of this matter.

          Respectfully submitted,

          RUSSELL F. SHEEHAN, as he is
          ADMINISTRATOR, ELECTRICAL
          WORKERS' HEALTH AND WELFARE
          FUND, LOCAL 103, I.B.E.W., et al,

          By their attorneys,

          /s/ Gregory A. Geiman
          Anne R. Sills, Esquire
          BBO #546576
          Gregory A. Geiman, Esquire
          BBO #655207
          Segal, Roitman & Coleman
          11 Beacon Street
          Suite #500
          Boston, MA  02108
          (617) 742-0208
          ggeiman@segalroitman.com

Dated:  May 15, 2007

## LOCAL RULE 7.1(A)(2) CERTIFICATION

    Counsel hereby certifies, in accordance with Rule 7.1(A)(2), that prior to filing the instant motion he left a number of telephone messages for Defendant's owner in a good faith effort to resolve this matter; however, these telephone messages went unreturned.

          /s/ Gregory A. Geiman
          Gregory A. Geiman, Esquire

## CERTIFICATE OF SERVICE

    I hereby certify that the above Plaintiffs' Renewed Motion for the Issuance of a Capias has been served by first class mail upon Defendant Chris Mealey Electrical, Inc. at 90 Wilkins Road, Braintree, MA  02184 this 15th day of May, 2007.

          /s/ Gregory A. Geiman
          Gregory A. Geiman, Esquire

GAG/gag&ts
ARS 3013 02-037/motion-renewed-capias.doc